# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 9, 2022 Session

## JAMES A. WELCH ET AL. V. OAKTREE HEALTH AND REHABILITATION CENTER LLC D/B/A CHRISTIAN CARE CENTERS OF MEMPHIS ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. CT-000544-18  Jerry Stokes, Judge**

———————————————————

**No. W2020-00917-SC-R11-CV**

———————————————————

Tennessee's Durable Power of Attorney for Health Care Act, Tennessee Code Annotated sections 34-6-201 to -218, includes a provision for limited statutory immunity from civil liability, under certain conditions, for health care providers who rely in good faith on health care decisions made by an apparent agent on a principal's behalf. *Id.* § -208.  Tennessee's Health Care Decisions Act, Tennessee Code Annotated sections 68-11-1801 to -1815, includes a similar provision for limited statutory immunity from civil liability, under certain conditions, for health care providers who comply in good faith with health care decisions made by an apparent agent on a principal's behalf. *Id.* § -1810.  The health care decision in this case is the execution of an arbitration agreement with admission to a nursing home.  The agreement was signed by an agent under a durable power of attorney for health care executed several years earlier.  After the resident's death, his estate filed a wrongful death lawsuit against the nursing home on negligence theories.  On appeal from the trial court's denial of the defendant nursing home's motion to compel arbitration, we hold that the nursing home does not meet the requirements for limited statutory immunity from civil liability under either the Durable Power of Attorney for Health Care Act or the Health Care Decisions Act.  Consequently, the trial court did not err in considering evidence on whether the principal had the requisite mental capacity to execute the durable power of attorney for health care.  We overrule the holding on the immunity provision in the Durable Power of Attorney for Health Care Act, Tennessee Code Annotated section 34-6-208, in *Owens v. National Health Corporation*, 263 S.W.3d 876, 889 n.4 (Tenn. 2007), to the extent it is inconsistent with this opinion.  We affirm the trial court, reverse the Court of Appeals, and remand to the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Remanded to the Court of Appeals**

HOLLY KIRBY, J., delivered the opinion of the court, in which ROGER A. PAGE, C.J., and SHARON G. LEE, JEFFREY S. BIVINS, and SARAH K. CAMPBELL, JJ., joined.

Cameron C. Jehl, Carey L. Acerra, Deena K. Arnold, and Eric H. Espey, Memphis, Tennessee, and Deborah Truby Riordan, Little Rock, Arkansas, for the appellant, James A. Welch, Next of Kin and Administrator ad Litem of Estate of David Neil Welch, deceased, and on behalf of the wrongful death beneficiaries of David Neil Welch.

Craig C. Conley, Quinn N. Carlson, and W. Preston Battle IV, Memphis, Tennessee, and Christy Tosh Crider, Nashville, Tennessee, for the appellees, Oaktree Health and Rehabilitation Center, LLC d/b/a Christian Care Center of Memphis, Care Centers Management Consulting, Inc., and Christian Care Center of Memphis, LLC.

## OPINION
### FACTUAL AND PROCEDURAL HISTORY

The decedent in this case, David Welch ("David"), was the brother of Plaintiff/Appellant James Welch ("James"), the administrator of David's estate.[1] David was diagnosed with Down syndrome shortly after he was born; he could not read and had difficulty understanding and following instructions. David had no formal education, and James described him as having "the mind of a two-year-old."

In 2012, David needed cataract surgery, and James helped his brother obtain care. The physician scheduled to perform the surgery required James to get a health care power of attorney for David. James printed out an online durable power of attorney for health care ("POA") form and filled it out, listing James as David's health care agent and giving James authority to make David's health care decisions. At James's direction, David "scratched his name" on the signature line on the last page. The POA also had the signatures of two witnesses who declared under penalty of perjury that the principal, David, was known to them, signed or acknowledged the document in their presence, and "appears to be of sound mind and under no duress, fraud or undue influence."

James used the POA form for David's eye surgery and afterward continued to use it for other health care providers for David. James was never appointed as David's guardian or conservator. No physician appointed James as David's health care agent or surrogate.

---

[1] We use first names for David Welch and James Welch to avoid confusion because they share the same last name. No disrespect is intended.

In November 2016, James sought to admit David to a residential nursing home facility in Memphis, Tennessee, Defendant/Appellees Oaktree Health and Rehabilitation Center LLC, d/b/a Christian Care Center of Memphis ("Christian Care"). Christian Care was aware David had been diagnosed with Down syndrome.

As part of the admission process, James executed several documents on David's behalf. They included an arbitration agreement ("Arbitration Agreement"). It is undisputed that Christian Care did not require execution of the Arbitration Agreement; David would still have been admitted to the facility had James declined to sign it. The Arbitration Agreement lists Christian Care as the "Facility," David Welch as the "Resident," and James Welch as the "Representative." James signed it and filled out his "Relationship to Resident" as "Brother [and] POA." The Arbitration Agreement states it "waives Resident's right to a trial in court and a trial by a jury for any future legal claims resident may have against facility."

The Arbitration Agreement required the representative of the resident to provide Christian Care with a copy of "the document creating the agency or guardianship." Both parties agree that James would have shown the POA form to Christian Care in the admission process.

David lived at Christian Care for several months. On April 10, 2017, David was transferred to Saint Francis Hospital. He died four days later, at age 62.

On February 7, 2018, James, in his capacity as administrator of David's estate ("Plaintiff"), sued Christian Care and related entities (collectively, "Defendants") in the Circuit Court in Shelby County, Tennessee.[2] The complaint alleges health care liability, ordinary negligence, and wrongful death. It seeks compensatory and punitive damages and includes a demand for a jury trial.

In response, the Defendants filed a motion to compel arbitration based on the Arbitration Agreement. The trial court let the parties engage in discovery related to arbitration.[3]

---

[2] The complaint lists James as the Plaintiff "et al." presumably because he sued in his capacity as administrator of David's estate and on behalf of beneficiaries. In this opinion, however, we refer to Plaintiff in the singular.

[3] Under Tennessee statutes, if a party files a motion to compel arbitration and it is opposed, the trial court proceeds immediately to determine whether the motion should be granted:

> On application of a party showing an agreement described in § 29-5-302, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall

- 3 -

In response to the motion to compel arbitration, Plaintiff asserted that James had no authority to sign the Arbitration Agreement because David did not have the mental capacity to appoint an agent when David executed the POA. In support, Plaintiff submitted David's medical records, as well as an expert affidavit and deposition testimony.[4]

In reply, Defendants argued that the trial court could not look beyond the face of the POA to consider evidence of David's mental capacity. They based this argument on Tennessee Code Annotated section 34-6-208, the immunity provision in Tennessee's Durable Power of Attorney for Health Care Act, as well as a footnote in this Court's opinion in *Owens v. National Health Corporation*, 263 S.W.3d 876 (Tenn. 2007).[5] In the alternative, Defendants argued that the evidence on David's lack of mental capacity was not clear and convincing.

The trial court entered an order stating that it would consider evidence on whether David had the mental capacity to execute the POA. After doing so, it entered a second order denying the motion to compel arbitration. The trial court found by clear and convincing evidence that David lacked the requisite mental capacity to execute the POA. As a result, the POA was invalid, and James did not have authority to execute the Arbitration Agreement on David's behalf.

Defendants appealed to the Court of Appeals.[6] On appeal, they raised two issues: (1) whether the trial court erred in looking beyond the face of the POA to determine

---

proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

Tenn. Code Ann. § 29-5-303(a) (2012).

[4] Plaintiff submitted an affidavit and deposition testimony from A. Jefferson Lesesne, M.D., a licensed physician in the State of Georgia with training and knowledge in the provision of long-term care, as well as treatment of patients with Down syndrome and other cognitive impairments. Dr. Lesesne reviewed the medical records, depositions, and other documentation related to David in preparation for his testimony. In the alternative, Plaintiff argued that the Arbitration Agreement was unconscionable. The trial court did not address unconscionability, and it is not at issue in this appeal.

[5] As explained more fully below, the plaintiff in *Owens* questioned whether the principal was competent to execute a power of attorney granting authority to an agent. In response to a petition to rehear, the *Owens* Court stated that, on remand, "[d]iscovery should not be permitted . . . concerning the validity of the power of attorney or the circumstances surrounding its execution." 263 S.W.3d at 889 n.4 (citing Tenn. Code Ann. § 34-6-208 (2021)).

[6] Under Tennessee statutes, Defendants had a right to immediately appeal the trial court's denial of the motion to compel arbitration: "An appeal may be taken from: (1) An order denying an application to compel arbitration made under § 29-5-303 . . . ." Tenn. Code Ann. § 29-5-319(a).

whether David had the mental capacity to execute it; and (2) whether the trial court erred in finding clear and convincing evidence that David lacked the requisite mental capacity when he signed the POA.

The Court of Appeals reversed the trial court on the first issue. *Welch v. Oaktree Health & Rehab. Ctr. LLC.*, No. W2020-00917-COA-R3-CV, 2022 WL 589926 (Tenn. Ct. App. Feb. 28, 2022), *perm. app. granted* (Tenn. Aug. 4, 2022). As a threshold determination, the intermediate appellate court concluded that the POA was not governed by the Durable Power of Attorney for Health Care Act, Tennessee Code Annotated sections 34-6-201 to -218 (2021), as contended by Defendants. *Id.* at *7–8. Instead, the court concluded that the POA was governed by Tennessee Code Annotated section 68-11-1810, the immunity provision in the Health Care Decisions Act. *Id.* (citing Tenn. Code Ann. §§ 68-11-1801 to -1815 (2013)).

On the merits, based on section 68-11-1810, the appellate court held that the trial court erred by considering evidence on whether David had the mental capacity to sign the POA. *Id.* at *12. It found that the footnote in *Owens* governed, even though *Owens* applied the immunity provision in the Durable Power of Attorney for Health Care Act, not the Health Care Decisions Act. *Id.* (citing *Owens*, 233 S.W.3d at 889 n.4, 891). It said: "[W]e believe that the Tennessee Supreme Court's application of Tennessee Code Annotated section 34-6-208 in *Owens* requires the same result with respect to section 68-11-1810 in this case, involving a power of attorney for health care and the newer [Health Care Decisions Act]."[7] *Id.* at *10. It found that this holding pretermitted the issue of whether there was clear and convincing evidence that David lacked the required mental capacity to execute the POA, and it remanded the case to the trial court to consider Plaintiff's argument that the Arbitration Agreement is unconscionable. *Id.* at *12.

Plaintiff then sought permission to appeal to this Court, arguing that the Court of Appeals erred in holding that the trial court could not consider evidence that David lacked the required mental capacity to execute the POA. We granted permission to appeal.

## ANALYSIS

In this appeal, we determine whether the immunity provisions in Tennessee statutes governing health care decisions apply to arbitration agreements executed with admission to a health care facility. We first consider a preliminary matter and then the merits of the parties' arguments.

---

[7] The Court of Appeals added, "It is not for this Court to say whether the statute was properly applied in *Owens*" because it was bound to follow decisions by the Tennessee Supreme Court. *Welch*, 2022 WL 589926, at *12.

# I.  Preliminary

As a preliminary matter, we address the Court of Appeals' choice to decide the case based on a statute other than the statute the parties cited to the trial court and argued on appeal, without giving the parties an opportunity to address the question of which statute is operative.

On appeal to the Court of Appeals, the Defendant's argument was based on Tennessee Code Annotated section 34-6-208, the immunity provision in the Durable Power of Attorney for Health Care Act, as well as the footnote in *Owens* citing that same statute. Neither party asked the Court of Appeals to consider the counterpart immunity provision in the Health Care Decisions Act.[8]

Nevertheless, without raising the question to the parties or asking for supplemental briefs, the Court of Appeals decided the appeal based on the Health Care Decisions Act, not the Durable Power of Attorney for Health Care Act.  *Welch*, 2022 WL 589926, at *7. It commented that both immunity provisions had substantially similar language and would yield the same result.  *Id.* at *10 (citing Tenn. Code Ann. §§ 34-6-208, 68-11-1810).

On appeal to this Court, Plaintiff argues that the Court of Appeals exceeded its scope of review by reversing the trial court's decision based on the immunity provision in the Health Care Decisions Act instead of the statute briefed by the parties, citing the discussion of the role of appellate courts in *State v. Bristol,* 654 S.W.3d 917 (Tenn. 2022).  Defendants agree that the Court of Appeals made its decision based on the Health Care Decisions Act without giving the parties an opportunity to address the question of which Act applies, but say this was a proper exercise of the Court of Appeals' discretion, and the result the appellate court reached would be correct under either Act.

In *Bristol*, the intermediate appellate court granted relief on an unpreserved and unpresented issue without giving the parties notice and an opportunity to be heard on that issue.  *Id.* at 923.  On appeal, this Court acknowledged that, in limited circumstances, appellate courts have discretion to consider unpresented or unpreserved issues.  *Id.* at 926. On the whole, however, *Bristol* emphasized the many reasons why such discretion should be exercised "sparingly."  *Id.* at 927 (citations omitted).

---

[8] The only mention of any provision in the Health Care Decisions Act in the Defendant's brief to the intermediate appellate court was in support of its alternate argument that the evidence did not clearly and convincingly establish that David lacked the capacity to execute the POA.  *See* Br. of Defendants-Appellees at 19, *Welch v. Oaktree Health & Rehab. Ctr. LLC*, No. W2020-00917-COA-R3-CV, 2022 WL 589926 (Tenn. Ct. App. Feb. 28, 2022) (No. CT-000544-18).

Regardless, *Bristol* stressed that when an appellate court exercises its discretion to consider an issue not properly presented, "it must give the parties 'fair notice and an opportunity to be heard.'" *Id.* (citations omitted). The Court explained:

> The requirement that an appellate court give parties notice and an opportunity to be heard is especially important when, as here, an appellate court undertakes to review an issue that was neither preserved below nor presented on appeal. Reviewing an unpreserved and unpresented issue presents an especially strong risk of unfairness and prejudice, since the party who stands to lose on that issue would have no inkling that the issue was in play and therefore no reason to develop a record on the issue, research it, or address it in its briefs. Such review also presents a serious risk of error by depriving the court of the adversarial presentation that is central to the truthfinding function of our judicial system. Affording the parties notice that the appellate court intends to address an issue and an opportunity to be heard on that matter helps mitigate those risks and protect the weighty interests that the party-presentation principle and preservation requirements are designed to foster.

*Id.*

In this case, the Defendant argued that the trial court erred in looking beyond the four corners of the POA to determine whether David Welch was competent to execute it. Its argument was based entirely on *Owens* and Tennessee Code Annotated section 34-6-208(a), the immunity provision in the Durable Power of Attorney for Health Care Act cited in *Owens*. Instead of considering that statute, the Court of Appeals chose to interpret a different statute, Tennessee Code Annotated section 68-11-1810(a)(1), the immunity provision in the Health Care Decisions Act. By happenstance, as discussed below, we have an unusual situation where two similar statutes are potentially applicable, so the appellate court was still looking at the overall question of whether the trial court was precluded by statute from considering evidence on David's mental capacity. But that question hinges on statutory interpretation, and the Court of Appeals decided the case by interpreting *an entirely different statute*. *Welch*, 2022 WL 589926, at *7.

Certainly, the parties' failure to argue that the Health Care Decisions Act is the operative statute did not bind the appellate court; it could fairly question whether it should consider the Health Care Decisions Act instead of the Durable Power of Attorney for Health Care Act. *Bristol*, 654 S.W.3d at 925 (explaining that an appellate court is "not precluded from supplementing the contentions of counsel through [its] own deliberation and research") (citation omitted); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (explaining that "[w]hen an issue . . . is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the

independent power to identify and apply the proper construction of governing law"). If an appellate court comes to believe after oral argument that the parties have focused on the wrong statute, it can and should take steps to apply the correct law.

But, barring unusual circumstances, those steps should normally include efforts to allow the parties to weigh in. We stop short of saying the Court of Appeals was *required* to ask the parties to address whether it should construe the immunity provision in the Health Care Decisions Act instead of the Durable Power of Attorney for Health Care Act. But doing so clearly would have been best practice. As in *Bristol*, the parties in this case had "no inkling" that another statute "was in play and therefore no reason to . . . research it[] or address it in [their] briefs." 654 S.W.3d at 927. They were put in the position of having to address the question either "for the first time in a petition for rehearing *after* the court has already ruled" or in a further appeal. *Id.* at 928. The record here indicates no reason why the appellate court could not have at least ordered supplemental briefing on the question of which statute applies.

Now the question of the Health Care Decisions Act has been teed up, and the parties have had an opportunity to address it in their briefs and in oral argument. Before this Court, both take the position that the result should be the same regardless of which Act applies. Plaintiff argues that the trial court had authority under either Act to consider evidence on whether David lacked the requisite mental capacity to execute the POA, so we should reverse the holding of the Court of Appeals. Defendants argue that the immunity provisions in both Acts prohibit the trial court from considering evidence of David's competence, so we should affirm the holding of the Court of Appeals.

We will address the immunity provisions in both Acts in our analysis of whether the trial court was precluded from considering evidence of David's mental capacity.

## II.     Overview of Normal Procedure Absent Immunity

As our Court of Appeals has observed, "An arbitration agreement is, of course, a contract." *Elite Emergency Servs., LLC v. Stat Sols., LLC*, No. M2008-02793-COA-R3-CV, 2010 WL 845392, at *7 (Tenn. Ct. App. Mar. 10, 2010).  Arbitration "is a consensual proceeding in which the parties select decision-makers of their own choice and then voluntarily submit their disagreements to those decision-makers for resolution in lieu of adjudicating the dispute in court." *Id.* at *8 (citations omitted).

In Tennessee, arbitration agreements are generally enforceable unless there are grounds to revoke the agreement. *Id.* (citations omitted).  The Court of Appeals has outlined the normal procedure at the trial court level when a motion to compel arbitration is opposed on the ground that the arbitration agreement is unenforceable:

> When one of the parties to the arbitration agreement opposes a motion to compel arbitration, the trial court must decide certain gateway matters, such as whether the parties have a valid arbitration agreement at all.  Similar to a motion for summary judgment, resolving these gateway issues frequently requires the consideration of matters outside of the pleadings.  However, a motion to compel arbitration differs from either a motion to dismiss or a motion for summary judgment, because the trial court must go on to determine whether the arbitration agreement is in fact enforceable before the motion to compel arbitration can be decided. . . .
>
> In considering opposition to a motion to compel arbitration, a court must distinguish between those arguments attacking the agreement which can be resolved solely as a matter of law and those arguments which require resolution of factual issues.  While the former category mirrors a case in which a court is called upon to interpret contractual language and apply it to uncontested facts, the latter requires the trial court to receive evidence and resolve the relevant disagreements before deciding the motion.
>
> * * *
> The trial court's role, then, is not just to determine if there is an issue regarding enforceability.  It must also determine if the agreement is in fact enforceable. . . . [I]f the party challenging the arbitration agreement interposes such defenses as . . . lack of authority, it is up to the trial court to resolve such issues and make a clear ruling as to whether or not the agreement is enforceable.  Therefore, the trial court must proceed expeditiously to an evidentiary hearing when it faces disputed issues of fact that are material to

a party's motion to compel arbitration; it may not decline to resolve the question until trial of the underlying case.

*Id.* (cleaned up) (citations omitted).[9]

Here, the trial court below followed this normal procedure and determined that the Arbitration Agreement was unenforceable because James did not have authority to execute it on David's behalf. "An agent has the power to make contracts that are binding on a principal . . . when the agent has actual authority, express or implied." 12 *Williston on Contracts* § 35:11 (4th ed.). James's authority to execute the Arbitration Agreement here derives from the POA David signed, appointing James as his agent. Execution of a power of attorney "creates a principal-agent relationship."[10] *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 749 (Tenn. 2007) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296–97 n.1 (Tenn. Ct. App. 2001)).

A "principal's capacity is requisite to a relationship of agency." *Restatement (Third) Of Agency* § 3.04 cmt. b (2006). "[T]o have an agency relationship under a power of attorney, the principal must have the capacity to contract." *Rawlings*, 78 S.W.3d at 296 n.1 (citing *Testa v. Roberts*, 542 N.E.2d 654, 658 (Ohio Ct. App. 1988); *In re Thames*, 544 S.W.2d 854, 856–57 (S.C. Ct. App. 2001)). Whether a "party whose act is called in question" has the requisite mental capacity is a "question of fact" to be determined from evidence. *Nashville, C. & St. L.R. Co. v. Brundige*, 84 S.W. 805, 805 (Tenn. 1905). Here, after an evidentiary hearing, the trial court determined that David did not have the required mental capacity to designate James as his agent.

Thus, the trial court below followed the normal procedure when a motion to compel arbitration is opposed on the basis that the arbitration agreement is unenforceable because the agent who executed it was without authority to do so.

## III.  Background on Two Statutes

---

[9] Generally, "the issue of whether a valid agreement to arbitrate exists should be decided by the courts before submitting the remainder of the claim to arbitration." *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 746 n.1 (Tenn. 2015) (citing *Taylor v. Butler*, 142 S.W.3d 277, 283–84 (Tenn. 2004)).

[10] The common law of agency "attributes the legal consequences of one person's action to another person." *Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *6 (Tenn. Ct. App. Oct. 20, 2008) (quoting *Restatement (Third) of Agency* ch. 2, Introductory Note (2006)). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) Of Agency*, *supra*, § 1.01. "Relationships of agency are among the larger family of relationships in which one person acts to further the interests of another and is subject to fiduciary obligations." *Id.* § 1.01 cmt. g.

- 10 -

As background, it is helpful to explain briefly how Tennessee came to have two alternative statutes that potentially apply to durable powers of attorney for health care such as the POA here.

Before 1990, it was unclear whether a durable power of attorney "could be used to authorize a proxy decision-maker for an incompetent patient." Charles M. Key & Gary D. Miller, *The Tennessee Health Care Decisions Act A Major Advance in the Law of Critical Care Decision Making*, Tenn. B.J., Aug. 2004, at 25, 26. In 1990, Tennessee's legislature adopted the Durable Power of Attorney for Health Care Act, which authorized the use of durable powers of attorney for health care and set out requirements for them. *Id.*; *see* Tenn. Code Ann. §§ 34-6-201 to -218 ("Durable Power of Attorney for Health Care Act"). This allowed for the written appointment of an agent to make health care decisions for a principal if the principal became unable to do so.[11] Key & Miller, *supra*, at 27.

Despite enactment of the Durable Power of Attorney for Health Care Act, difficulties remained in securing valid, executed advance directives. *Id.* at 28. In 2004, with intent "to simplify formal requirements" for such directives, Tennessee's legislature adopted the Tennessee Health Care Decisions Act. *Id.*; *see* Tenn. Code Ann. §§ 68-11-1801 to -1815 ("Health Care Decisions Act").

The Health Care Decisions Act outlines how a competent adult may execute a written "advance directive"[12] for health care that authorizes an "agent"[13] to make health

---

[11] "Durable power of attorney" is defined by statute as:

a power of attorney by which a principal designates another as the principal's attorney in fact in writing and the writing contains the words 'This power of attorney shall not be affected by subsequent disability or incapacity of the principal,' or 'This power of attorney shall become effective upon the disability or incapacity of the principal,' or similar words showing the intent of the principal that the authority conferred shall be exercisable, notwithstanding the principal's subsequent disability or incapacity.

Tenn. Code Ann. § 34-6-102. The Durable Power of Attorney for Health Care Act defines a "durable power of attorney for health care" as "a durable power of attorney to the extent that it authorizes an attorney in fact to make health care decisions for the principal." Tenn. Code Ann. § 34-6-201(1).

[12] The Health Care Decisions Act defines "advance directive" as "an individual instruction or a written statement relating to the subsequent provision of health care for the individual, including, but not limited to . . . a durable power of attorney for health care." Tenn. Code Ann. § 68-11-1802(a)(1) (2013).

[13] The Health Care Decisions Act defines "agent" as "an individual designated in an advance directive for health care to make a health care decision for the individual granting the power." Tenn. Code Ann. § 68-11-1802(a)(2).

care decisions should the adult lose the capacity to do so. *See* Tenn. Code Ann. § 68-11-1803(b). A durable power of attorney for health care is considered a type of advance directive. *Id.* § -1802(a)(1). The Health Care Decisions Act includes a simplified definition of "power of attorney for health care" as "the designation of an agent to make health care decisions for the individual granting the power." *Id.* § -1802(a)(14).[14]

The Health Care Decisions Act also created alternatives to written powers of attorney for health care, less formal methods for proxy decision-making. A competent adult may—orally or in writing—designate someone "to act as surrogate by personally informing the supervising health care provider." *Id.* § -1806(a). For a patient who lacks capacity and has no agent or surrogate, the Act gives directions for health care providers to identify a surrogate to make health care decisions on the patient's behalf. *Id.* § -1806(c). It also addresses situations where no surrogate is available. *See id.* § -1806(c)(5). Overall, the Act provides "comprehensive, common sense method[s] for making health care decisions" for patients who cannot act on their own behalf. *Barbee*, 2008 WL 4615858, at *11.

Notably, the Health Care Decisions Act did not repeal existing statutes on durable powers of attorney for health care, including the Durable Power of Attorney for Health Care Act.[15] Instead, the Health Care Decisions Act provides that "durable powers of attorney for health care executed prior to July 1, 2004 will be governed by the old law, as will instruments executed on or after July 1, 2004 that 'evidence an intent' to be governed

---

[14] "[T]here are no statutorily prescribed forms, no 'magic language' requirements for the body of the instrument, and no requirements for legalistic warnings." Key & Miller, *supra*, at 28.

[15] Initial drafts of the Health Care Decisions Act "provided for the repeal of the old . . . durable health care power of attorney laws with grand-fathering provisions . . .; however, following an expression of a concern by some members of the bar that such repeal would create confusion, the statute was redrafted to leave the old laws in place." Key & Miller, *supra*, at 28 n.22.

by the old law." Key & Miller, *supra*, at 28 n.22. Thus, both Acts remain in effect under redundant savings provisions. *See* Tenn. Code Ann. §§ 34-6-217;[16] 68-11-1803(j).[17]

The parties' arguments to the trial court were based on the immunity provision in the Durable Power of Attorney for Health Care Act, and this statute was applied in the footnote passage in *Owens v. National Health Corporation* on which the Defendants rely. 263 S.W.3d at 889 n.4. For those reasons, we first consider the immunity provision in the Durable Power of Attorney for Health Care Act, then its application in *Owens*. After that we consider the immunity provision in the Health Care Decisions Act, which was applied by the Court of Appeals.

### *a.* **Durable Power of Attorney for Health Care Act**

The immunity provision in the Durable Power of Attorney for Health Care Act states:

> Subject to any limitations stated in the durable power of attorney for health care, and, subject to subsection (b) and §§ 34-6-210 -- 34-6-212, a health care provider is not subject to criminal prosecution, civil liability or professional disciplinary action except to the same extent as would be the

---

[16] The Durable Power of Attorney for Health Care Act provides:
(a) A durable power of attorney for health care entered into before July 1, 2004, under this part shall be given effect and interpreted in accord with this part.

(b) A durable power of attorney for health care entered into on or after July 1, 2004, that evidences an intent that it is entered into under this part shall be given effect and interpreted in accord with this part.

(c) A durable power of attorney for health care entered into on or after July 1, 2004, that does not evidence an intent that it is entered into under this part may, if it complies with the Tennessee Health Care Decisions Act, compiled in title 68, chapter 11, part 18, be given effect as an advance directive under that act.

Tenn. Code Ann. § 34-6-217.

[17] The Health Care Decisions Act provides:

Any living will, durable power of attorney for health care, or other instrument signed by the individual, complying with the terms of title 32, chapter 11, and a durable power of attorney for health care complying with the terms of title 34, chapter 6, part 2, shall be given effect and interpreted in accord with those respective acts. Any advance directive that does not evidence an intent to be given effect under those acts, but that complies with this part may be treated as an advance directive under this part.

Tenn. Code Ann. § 68-11-1803(j).

case if the principal, having had the capacity to give informed consent, had made the health care decision on the principal's own behalf under like circumstances, if the health care provider relies on a health care decision and both of the following requirements are satisfied:

(1) The decision is made by an attorney in fact who the health care provider believes in good faith is authorized under this part to make the decision; and

(2) The health care provider believes in good faith that the decision is not inconsistent with the desires of the principal as expressed in the durable power of attorney for health care or otherwise made known to the health care provider, and, if the decision is to withhold or withdraw health care necessary to keep the principal alive, the health care provider has made a good faith effort to determine the desires of the principal to the extent that the principal is able to convey those desires to the health care provider and the results of the effort are made a part of the principal's medical records.

Tenn. Code Ann. § 34-6-208(a).

The Defendants argue that this immunity provision alters the normal procedure at the trial court level when a party challenges a motion to compel arbitration by interposing a defense such as lack of authority. Under section 34-6-208(a), Defendants argue, if a health care provider relies in good faith on a facially valid durable power of attorney for health care used for an arbitration agreement, the trial court is statutorily precluded from looking beyond the face of the POA to consider evidence of the principal's mental capacity. Here, Defendants stress, James presented Christian Care with a "fully executed 2012 Health Care Power of Attorney, which bore the signatures of two witnesses who swore under penalty of perjury that they knew David, that he signed the document in their presence, and that he 'appear[ed] to be of sound mind and under no duress, fraud or undue influence.'" Under these circumstances, they emphasize, the health care provider had ample reason to "believe[] in good faith" that James was authorized to sign the Arbitration Agreement. *See* Tenn. Code Ann. § 34-6-208(a)(1).

This issue requires us to construe section 34-6-208(a). In doing so, we are mindful that "[t]he text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). We consider "the language of the statute, its subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *Spires v. Simpson*, 539 S.W.3d 134, 143 (Tenn. 2017) (quoting *State v. Collins*, 166 S.W.3d 721, 726 (Tenn. 2005)). Our construction

must be reasonable in light of the statute's purposes and objectives. *Beard v. Branson*, 528 S.W.3d 487, 496 (Tenn. 2017) (citing *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001)).

Subject to limitations not applicable here, section 34-6-208 offers limited protection to health care providers who rely on health care decisions by a principal's attorney-in-fact. Such health care providers are "not subject to . . . civil liability . . . except to the same extent as would be the case if the principal, having had the capacity to give informed consent, had made the health care decision on the principal's own behalf under like circumstances . . . ." Tenn. Code Ann. § 34-6-208(a). Thus, if the statutory requirements are met, such health care providers are immune from civil liability except to the extent they would be liable had the principal made the health care decision. A grant of immunity from civil liability is clearly in derogation of the common law. As such, we must construe the statute strictly and confine it to its "express terms." *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023) ("Statutes 'in derogation of the common law,' moreover, must be 'strictly construed and confined to their express terms.'") (quoting *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809 (Tenn. 2015))).

The grant of immunity from civil liability in section 34-6-208(a) has conditions. Health care providers are not subject to civil liability "*if* the health care provider relies on a health care decision *and* both of the" good faith requirements quoted above "are *satisfied*." Tenn. Code Ann. § 34-6-208(a) (emphasis added). This language indicates all of the requirements for the grant of immunity must be met in order for health care providers to get statutory immunity.

Defendants argue in their briefs that the two good faith requirements are met here: Christian Care believed in good faith that James was authorized to execute the Arbitration Agreement on David's behalf, and they believed in good faith that this decision was not inconsistent with David's desires. *See id.* § -208(a)(1)–(2). They note that, under *Owens*, a durable power of attorney for health care provides authority for agents to execute arbitration agreements as part of admission to a health care facility. 263 S.W.3d at 885. Ergo, they contend, the decision to enter into an arbitration agreement in connection with admission to Christian Care is considered a "health care decision" under section 34-6-208(a).

For purposes of this appeal, we assume all of this to be true. Defendants fail to explain, however, how they "relied" on James's decision to execute the Arbitration Agreement. Section 34-6-208(a) states that health care providers are "not subject to . . . civil liability . . . *if* the health care provider *relies* on a health care decision," here, the decision to sign the Arbitration Agreement. Tenn. Code Ann. § 34-6-208(a) (emphasis added); *see Reliance*, *Black's Law Dictionary* (11th ed. 2019) ("Dependence or trust by a person, esp. when combined with action based on that dependence or trust. — rely, vb.").

- 15 -

Here, it is undisputed that David's admission to Christian Care was not conditioned on execution of the Arbitration Agreement; Christian Care would have admitted David even if James had refused to sign the arbitration materials in the general admission documents.

This stands in contrast with many other types of health care decisions. We find an example in the text of section 34-6-208: A "decision is to withhold or withdraw health care necessary to keep the principal alive." Tenn. Code Ann. § 34-6-208(a)(2). Had James, acting as David's agent, decided to withhold life-saving health care for David, one can readily see how Christian Care could have withheld care for David in good faith reliance on James's decision. In this case, however, Defendants did not depend or rely in any way on the Arbitration Agreement; they did not act or refrain from acting based on it.

In addition, the text of section 34-6-208 contemplates that the civil liability from which the provider gets immunity is related to or arises out of the health care decision. It states: "[A] health care provider is not subject to . . . civil liability . . . except to the same extent as would be the case if the principal . . . had made the health care decision . . . under like circumstances . . . ." *Id.* § -208(a). Again, using the example in the text of section 34-6-208(a)(2) of a decision to withhold life-saving health care, had James decided to withhold such care, Christian Care would have civil liability only to the extent as would be the case had David made that same decision "under like circumstances." *Id.*

Here, the complaint seeks damages based on wrongful death, negligence, and health care liability theories. None of the claims arise out of James's decision to execute the Arbitration Agreement. This Court has said, "Arbitration agreements do not limit liability, but instead designate a forum that is alternative to and independent of the judicial forum." *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 264 (Tenn. 2017) (quoting *Buraczynski v. Eyring*, 919 S.W.2d 314, 319 (Tenn. 1996)).

Indeed, the Arbitration Agreement itself says it does not alter Christian Care's duties: "[T]his Arbitration Agreement does not change the Facility's duty to use reasonable care in caring for residents and does not limit liability for any breach of that duty, but merely shifts certain disputes between the parties to a different forum . . . ." It says that the potential damages are unaffected by using arbitration as the forum: "The parties agree that damages awarded, if any, in an arbitration conducted pursuant to this Arbitration Agreement shall be determined in accordance with the provisions of the state or federal law applicable to a comparable civil action, including any prerequisites to, credit against, or limitations on, such damages."

Moreover, the Durable Power of Attorney for Health Care Act only provides immunity from "criminal prosecution, civil liability or professional disciplinary action." Tenn. Code Ann. § 34-6-208(a). The Defendants invoke the immunity provision to forestall inquiry into David's capacity and ensure arbitration of the parties' dispute. But

the statute offers protection from liability or prosecution—not from litigating in a particular forum.

Thus, considering the plain language of section 34-6-208(a), Defendants do not meet the requirements in the Durable Power of Attorney for Health Care Act that must be met in order for health care providers to get statutory immunity.

### b. *Owens* **footnote**

In support of their argument that they are entitled to statutory immunity, Defendants rely on language in a footnote to this Court's past decision in *Owens v. National Health Corporation*, in which the Court cited and applied section 34-6-208, the immunity provision in the Durable Power of Attorney for Health Care Act. *See Owens*, 263 S.W.3d at 889 n.4 (citing Tenn. Code Ann. § 34-6-208).

In *Owens*, an agent acting under a durable power of attorney for health care signed an arbitration agreement as a precondition for admission of the principal to a nursing home. *Id.* at 880–81. The primary issue on appeal was "whether a durable power of attorney for health care authorized the attorney-in-fact to enter into an arbitration agreement as part of a contract admitting the principal to a nursing home and thereby to waive the principal's right to trial by jury." *Id.* at 879. *Owens* answered that question in the affirmative, holding that an agent by dint of a power of attorney for health care had authority to enter into an arbitration agreement with a healthcare facility and waive the principal's right to a trial by jury. *Id.* On November 8, 2007, the *Owens* Court issued an opinion to that effect and remanded the case to the trial court for further proceedings. *Id.* at 879, 889.[18]

Three months later, in response to the defendants' petition to rehear, the *Owens* Court entered an order granting the petition in part and denying it in part. *Id.* at 890–91. The order stated:

> In their petition, the appellees allege that the Court improperly allowed discovery as to the principal's competence to sign the power of attorney.

---

[18] The *Owens* Court stated:

> We are unable to resolve the question of whether the arbitration agreement is unconscionable due to the limited nature of the factual record. We therefore conclude that the case should be remanded to the trial court for further proceedings on that issue. The trial court, in its discretion, may allow the parties to conduct discovery.

*Id.* at 889 (citing *Berger v. Cantor Fitzgerald Sec.*, 942 F. Supp. 963, 966 (S.D.N.Y. 1996)).

Upon due consideration, the Court concludes that appellees' petition to rehear is well-taken as to this issue and should therefore be granted. The petition to rehear is denied as to the remainder of the issues.

It appearing to the Court from appellees' Petition to Rehear and appellant's response that footnote four of its Opinion filed November 8, 2007, should be modified . . . .

*Id.* at 891. The Court then modified footnote four of the opinion to read:

The plaintiff also questions whether King was incompetent to sign the nursing-home agreement when Daniel executed the contract pursuant to the power of attorney. The plaintiff asserts that the trial court should have permitted discovery regarding the circumstances surrounding the execution of both the nursing-home contract and the power of attorney, which was executed only twenty-one days later. We agree that discovery concerning whether King was incompetent to sign the nursing-home agreement should be permitted on remand. *Discovery should not be permitted, however, concerning the validity of the power of attorney or the circumstances surrounding its execution. See Tenn. Code Ann. § 34-6-208 (providing immunity to health care providers who rely on decisions "made by an attorney in fact who the health care provider believes in good faith is authorized" to make health care decisions).*

*Id.* at 889 n.4 (emphasis added).

Based on the language in footnote four as modified, the Defendants correctly argue, and the Court of Appeals correctly noted, that *Owens* prohibited the trial court from allowing discovery on the validity of the durable power of attorney for health care or the circumstances surrounding its execution. In doing so, the Court cited the immunity provision in the Durable Power of Attorney for Health Care Act. *Id.* (citing Tenn. Code Ann. § 34-6-208). Defendants argue that *Owens* was correct and should apply here.[19]

We cannot consider the *Owens* Court's reasoning on section 34-6-208(a) because the opinion gives us none. We must, however, consider any factual distinctions from this case. For example, in *Owens*, unlike this case, execution of the arbitration agreement was required as a precondition of admission to the facility. *Id.* at 887. So it is possible the

---

[19] Plaintiff argues that the language in footnote four of Owens was *dicta*. It was not. The Court of Appeals in this case correctly noted that "[d]ictum has been described as 'a remark or opinion uttered by the way' that 'has no bearing on the direct route or decision of the case but is made as an aside.'" *Welch*, 2022 WL 589926, at *5 (quoting *Staten v. State*, 232 S.W.2d 18, 19 (Tenn. 1950)). Here, the language at issue in footnote four of *Owens* was affirmative directive to the trial court on what it could not do on remand, so it was not an "aside."

Court found that the defendants in *Owens* "relied" on the agent's decision to agree to arbitration, within the meaning of section 34-6-208(a). Tenn. Code Ann. § 34-6-208(a) (providing immunity "if the health care provider *relies* on a health care decision" (emphasis added)).

However, as to whether the civil liability in *Owens* from which the provider sought immunity was related to or arose out of the health care decision, we see no difference between *Owens* and this case. *Id.* In *Owens*, the complaint asserted claims "for negligence; gross negligence; willful, wanton, reckless, malicious and/or intentional conduct; medical malpractice; and violations of the Tennessee Adult Protection Act." *Owens*, 263 S.W.3d at 881. None of these claims seem related to the arbitration agreement. And again, this Court has said that arbitration agreements do not affect liability, they only designate an alternative forum. *Harvey*, 532 S.W.3d at 264. The parts of the arbitration agreement quoted in *Owens* do not say otherwise, but the opinion does not reproduce the entire agreement. 263 S.W.3d at 880–81.

In short, with no reasoning to go on, the holding in footnote four of *Owens* on section 34-6-208 seems subject to question and should not be read as a blanket interpretation of that statute. It is not binding in this case. We overrule the holding in footnote four of *Owens* to the extent it is inconsistent with the above analysis of whether the Defendants met the conditions for statutory immunity in section 34-6-208(a).

### c. Health Care Decisions Act

The immunity provision in the Health Care Decisions Act, section 68-11-1810(a)(1), was applied by the Court of Appeals to reverse the decision of the trial court. *Welch*, 2022 WL 589926, at *10. That statute states:

> (a) A health care provider or institution acting in good faith and in accordance with generally accepted health care standards applicable to the health care provider or institution is not subject to civil or criminal liability or to discipline for unprofessional conduct for:
>
> (1) Complying with a health care decision of a person apparently having authority to make a health care decision for a patient, including a decision to withhold or withdraw health care . . . .

Tenn. Code Ann. § 68-11-1810(a)(1).

Section 68-11-1810(a)(1) is simpler than the immunity provision in the Durable Power of Attorney for Health Care Act, but it is similar. As Defendants point out, it broadly

offers statutory immunity from civil liability to health care providers who act in "good faith." The language in section 68-11-1810(a)(1) differs somewhat though.

In particular, while the Durable Power of Attorney for Health Care Act offers statutory immunity to a health care provider who "relies on a health care decision" by an agent, *id.* § 34-6-208(a), the Health Care Decisions Act provides a health care provider immunity from civil liability for "[c]*omplying* with a health care decision of a person apparently having authority to make a health care decision for a patient." *Id.* § 68-11-1810(a)(1) (emphasis added). To comply means "[t]o do what is required or requested; to conform, submit, or adapt to (a command, demand, requirement, etc.)." *Comply*, *Black's Law Dictionary* (11th ed. 2019). The immunity in this statute applies to civil liability "for" complying with the apparent agent's health care decision for the patient. Tenn. Code Ann. § 68-11-1810(a)(1). This statutory language directly links the civil liability to the provider's compliance with the agent's health care decision. It makes it clear that, to have the statutory immunity offered in section 68-11-1810(a)(1), the civil liability of the health care provider must arise out of its compliance with the agent's health care decision.

As with the Durable Power of Attorney for Health Care Act, the text of section 68-11-1810(a)(1) offers an example of the type of health care decision to which the immunity could apply: "a decision to withhold or withdraw health care." *Id.* Thus, if a person with apparent authority as an agent decided on a patient's behalf to withhold health care, and a health care provider, acting in good faith, complied with that health care decision, the health care provider could benefit from the immunity offered in section 68-11-1810(a)(1).

Defendants in this case do not meet the requirements for the statutory immunity offered in section 68-11-1810(a)(1). Defendants did not "comply" with the agent's decision here.[20] And again, the Plaintiff's complaint seeks damages based on wrongful death, negligence, and health care liability theories. The Defendants' potential civil liability does not arise out of James's decision to execute the Arbitration Agreement.

Moreover, similar to the Durable Power of Attorney for Health Care Act, the Health Care Decisions Act provides immunity only from "civil or criminal liability or to discipline for unprofessional conduct." *Id.* § -1810(a). The Defendants invoke the immunity provision in hopes of requiring arbitration of the parties' dispute, but the statute does not offer protection from litigating in a particular forum.

Thus, considering the plain language of section 68-11-1810(a)(1), Defendants do not meet the requirements in the Health Care Decisions Act that must be met in order for health care providers to get statutory immunity.

---

[20] We again assume for purposes of this appeal that James's decision to execute the Arbitration Agreement is a "health care decision" under the Health Care Decisions Act.

In sum, Defendants do not meet the requirements for statutory immunity from civil liability in either the Durable Power of Attorney for Health Care Act or the Health Care Decisions Act. *See* Tenn. Code Ann. §§ 34-6-208(a), 68-11-1810(a)(1). The holding in footnote four of *Owens* on section 34-6-208(a) does not control this case, and we overrule it to the extent it is inconsistent with the analysis in this opinion on whether the Defendants met the requirements for statutory immunity in section 34-6-208(a). *Owens*, 263 S.W.3d at 889 n.4 ("Discovery should not be permitted, however, concerning the validity of the power of attorney or the circumstances surrounding its execution." (citing Tenn. Code Ann. § 34-6-208)). We reverse the decision of the Court of Appeals and affirm the trial court's decision to consider evidence on the circumstances surrounding execution of the durable power of attorney for health care and whether the principal lacked the requisite mental capacity to sign it.[21]

Because the Court of Appeals ruled for the Defendants on statutory immunity, that holding pretermitted Defendants' second issue of whether the trial court erred in finding there was clear and convincing evidence that David lacked the requisite mental capacity when he signed the power of attorney for health care. We remand the case to the Court of Appeals for consideration of that issue and any other issues raised on appeal not pretermitted by our holding in this opinion.

---

[21] Plaintiff also raised the issue of whether the Court of Appeals' determination that the trial court erred in looking into the validity of the durable power of attorney for health care improperly favors nursing home arbitration agreements over other contracts, contrary to the requirements of 9 U.S.C.A. § 2 and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and Tennessee contract law. Our holding pretermits this issue.

## CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals' ruling that the trial court in this case erred in considering evidence on the circumstances surrounding execution of the durable power of attorney for health care and whether the principal lacked the requisite mental capacity to sign the document. We remand back to the Court of Appeals for consideration of whether the trial court erred in finding clear and convincing evidence that David lacked the requisite mental capacity when he signed the durable power of attorney for health care, and any other issues raised on appeal not pretermitted by our holding in this opinion. Costs of this appeal are taxed to the appellees, Oaktree Health and Rehabilitation Center, LLC d/b/a Christian Care Center of Memphis, Care Centers Management Consulting, Inc., and Christian Care Center of Memphis, LLC, for which execution may issue if necessary.

_____
HOLLY KIRBY, JUSTICE